**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

EUGENE BELLOLI,

        Plaintiff,

                              CASE NO. 2:13-cv-11287

v.

                              HON. MARIANNE O. BATTANI

PANERA, LLC,

        Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

      Before the Court is Defendant Panera, LLC's ("Panera") Motion for Summary Judgment (Doc. No. 14). Plaintiff Eugene Belloli filed this action seeking treatment and medical care costs for injuries he sustained when he fell out of his chair at Defendant's restaurant. In its motion, Panera argues that it is not liable for Plaintiff's injuries because it had no notice of the defect in the chair. For the reasons stated below, Defendant's motion is **DENIED**.

I.    STATEMENT OF FACTS

      On October 18, 2011, Belloli was dining at the Panera Bread restaurant in Sterling Heights, Michigan. After conversing with a friend for an hour and fifteen minutes, the wooden chair in which he was sitting collapsed. (Doc. No. 14, Ex. A at 27-28). The right front leg of the chair completely broke off. (Id.) Belloli noticed no obvious defect with the chair, and the chair did not wobble or make a noise while he was sitting in it. (Id. at 38).

      When Belloli fell to the ground, he hit his head on the booth behind him. (Doc. No. 14, Ex. B at 20). The manager on duty, Jason Mitchell, took pictures of the broken

chair and wrote an incident report.  (Doc. No. 14, Ex. C at 26).  He sent the report to risk management, which later ordered that the chair be disposed.  (Id. at 30).

The manager stated that the employees examined the chairs by visual cues and disposed of the chairs if they observed something wrong with them.  (Id. at 35). Periodic audit reports are conducted by the company, which disclose the condition of Panera's furniture.  (Doc. No. 17, Ex. D).  The most recent audit report was taken two months prior to the incident.  (Id.)  It indicates that the booth and chairs were not in good repair, and the actual score given was a zero out of a possible three points.  (Id.)  The note underneath the score states that "[o]ne of the high chairs is separating at the bottom."  (Id.)

As a frequent visitor of the coffee shop, Belloli never had any prior issues with these chairs.  (Doc. No. 14, Ex. A at 35).  The manager also stated that he never had a problem with the chairs in his three years working there and never observed a customer fall off any of the chairs.  (Doc. 14, Ex. C at 68).

Plaintiff filed his complaint on February 4, 2013, in the Macomb County Circuit Court alleging Panera failed to exercise reasonable care in maintaining its premises.  (Doc. No. 1).  Defendant removed the case to federal court and now moves for summary judgment.

II.    STANDARD OF REVIEW

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail

as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts supported by affidavits or other appropriate evidence establishing a genuine issue for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1)(A). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  The Court "must lend credence" to the non-moving party's interpretation of the disputed facts.  Marvin v. City of Taylor, 509 F.3d 234, 238 (6th Cir. 2007) (citing Scott v. Harris, 127 S. Ct. 1769, 1775 (2007)).  The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice.  Rather, there must be evidence on which the jury could reasonably find for the non-moving party. Hopson v.Daimlerchrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

III.   ANALYSIS

In Michigan, a landowner owes a legal duty "to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land that the landowner knows or should know the invitees will not discover, realize, or protect themselves against."  Bertrand v. Alan Ford, Inc., 537 N.W.2d 185, 186 (Mich. 1995).  Because a landowner's duty is to protect invitees from unreasonable risks of

3

harm, landowners are not the "absolute insurers of the safety of their invitees." Id. at

188.

A premises owner owes a duty of due care to invitees. The Michigan Supreme

Court has held that:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

Id. at 186 (quoting 2 Restatement Torts, 2d, § 343, p. 215-216).

In order to be liable, the premises possessor must have either created the

dangerous condition or had actual or constructive notice of the condition. Sparks v.

Wal-Mart Stores, Inc., 361 F. Supp. 2d 664, 668 (E.D. Mich. 2005). The premises

possessor is not automatically liable for a mere existence of a defect or a dangerous

condition. Kroll v. Katz, 132 N.W.2d 27, 32 (Mich. 1965). Instead, it must be shown

that such defect were of such character or had existed for such a period of time that the

jury might reasonably conclude that by the use of due care, the defendant would have

discovered such defects or danger and taken the necessary action to correct the

defects. Id.


A.    **Notice of Risk of Harm**

The premises possessor will not be liable for harm resulting from conditions from which the occupier could not have discovered with reasonable care.  Kroll, 132 N.W.2d at 32.  The Michigan Supreme Court has held that a reasonable premises possessor's duty of due care to inspect is not limited to a casual observation, but the possessor must be reasonably sure that he or she is not inviting his or her invitees into danger.  Torma v Montgomery Ward & Co, 58 N.W.2d 149, 153 (Mich. 1953); see Grandberry-Lovette v. Garascia, 844 N.W.2d 178, 184 (Mich. Ct. App. 2014).

Panera asserts they had no actual notice of the defect in the chair.  The assistant manager, Jason Mitchell, testified that the chairs were inspected visually, and if there was an issue with the chair, then it would be removed from the floor until further inspected.  (Doc. No. 14, Ex. C at 67).  It is not clear whether a simple visual inspection is sufficient to establish reasonable care.  A reasonably prudent landowner may have inspected the chairs more closely since they were in use for several years and coming apart.  (Doc. No. 17, Ex. G); see Grandberry-Lovette, 844 N.W.2d at 185 (Even if the condition is not observable on casual inspection, it does not preclude a jury from finding that the premises possessor should have constructive notice of the condition if a "reasonably prudent premises possessor would have employed a more vigorous inspection regime that would have revealed the dangerous condition").

Panera asserts they had no constructive notice of the defect in the chair because there was never an issue with the chairs in the past.  Although there may have never been an issue with the chairs before, this does not establish that Panera did not have constructive notice.  See Schooley v. Consol. Roadhouse of Taylor, LLC, 781 N.W.2d 807, 808 (Mich. 2010) ("The fact that an unlatched dispenser in the restaurant may not

5

have caused injuries in the past is not dispositive.").   The audit report stated the chairs and booths were not in good repair, and there is a dispute as to whether this applied to one chair or all of Panera's chairs.   (Doc. No. 17, Ex. D at 10).   Moreover, Panera provided little evidence regarding the procedures employed in inspecting these chairs for the audit report.  It is possible that more than one chair in the restaurant was not in good repair since the chairs had been in daily use for several years and were used by a plethora of customers.  Thus, a reasonable jury could find Panera should have known of the defect in the chair.

      B.    **Obvious Defect**

As previously noted, <u>Bertrand</u> provides that, "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."  <u>Bertrand</u>, 537 N.W.2d at 186.  Belloli was sitting at that particular chair for over an hour, and it did not wiggle, make noise, and appeared sturdy.  (Doc. No. 14, Ex. A at 38).   The manager also mentions that there seemed to be nothing wrong with the chairs when he inspected them since it was not removed from the sale floor.  (Doc. No. 14, Ex. C at 67).   Therefore, there was no obvious sign that there was a defect with the chair, and Panera should not have expected Belloli to notice such a defect with the chair.

      C.    **Reasonable Care to Protect the Invitees**

The duty of reasonable care requires the premises possessor to undertake the type of inspection that a "reasonably prudent" premises possessor would exercise under similar circumstances to protect his or her invitees.  Determining the reasonableness of

the defendant's conduct is generally a question for the jury.  Bertrand, 537 N.W.2d at 188.

Belloli asserts that Panera did not undertake a reasonable inspection.  Panera's manager, Jason Mitchell, testified that when a chair was coming apart at the seams, the workers simply pushed it back together and left the chairs on the floor.  (Doc. No. 14, Ex. C at 63).   Panera provided no evidence that these types of inspections are commonly used in the industry or that the inspections routinely uncover defects in the furniture.  The parties do not dispute that the chairs had been in use for over seven years.  Consequently, there is sufficient evidence in the record for a jury to determine that Panera should have conducted a more thorough investigation of its premises and summary judgment is inappropriate.

IV.    CONCLUSION

Accordingly, Defendant's motion is **DENIED**.

IT IS SO ORDERED.

Date:  August 18, 2014                          s/Marianne O. Battani
                                                MARIANNE O. BATTANI
                                                United States District Judge


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 18, 2014.

                                                s/ Kay Doaks
                                                Case Manager